IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WIT SOFTWARE, CONSULTORIA E SOFTWARE PARA A INTERNET MOVEL, S.A., <br><br>*Plaintiff*, <br><br>v. <br><br>TALKDESK, INC., <br><br>*Defendant*. | § § § § § § § § § § § § § Civil Action No. 23-94-WCB |

**MEMORANDUM OPINION AND ORDER**

Plaintiff WIT Software, Consultoria E Software Para A Internet Movel, S.A., ("WIT") brought this action against defendant Talkdesk, Inc.,[1] alleging breach of contract, trade secret misappropriation, copyright infringement under Portuguese law, and several other common law claims. Dkt. No. 1. Before filing an answer, Talkdesk filed a motion to dismiss the complaint under the doctrine of *forum non conveniens* and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 7. WIT filed an answering brief, Dkt. No. 22, and Talkdesk replied, Dkt. No. 25. I held oral argument on the present motion on May 11, 2023. For the reasons set forth below, the motion is GRANTED.

---

[1] "Talkdesk" will be used to refer to the defendant, Talkdesk, Inc., which is an American company incorporated in Delaware with its corporate headquarters in San Francisco, California. "Talkdesk Portugal" will be used to identify the Portuguese company that is a wholly owned subsidiary of Talkdesk, Inc. Talkdesk asserts that 98 percent of all the developers and engineers who build and work on Talkdesk's products are located outside the U.S., with roughly 80 percent located in Portugal. Dkt. No. 11 ¶ 4. Neither Talkdesk nor Talkdesk Portugal have any employees or offices in Delaware. *Id.*

1

I.     **Background**

WIT's allegations relate to a series of events that occurred following a meeting between representatives of WIT and Talkdesk in 2018.[2] WIT is a Portuguese software company that develops technology for use in the telecommunications industry. One of WIT's software products is called "Rich Communications Service (RCS)." Talkdesk is a Delaware corporation that sells business phone systems, including a product called the "Talk Desk Phone."

In May 2018, WIT and Talkdesk representatives met to discuss a possible business relationship between the two companies. The discussions between WIT and Talkdesk focused on WIT's RCS product. As part of those discussions, the Talkdesk representatives requested that the parties enter into a non-disclosure agreement. That agreement was executed on May 18, 2018. The agreement provided that any party who received proprietary or confidential information would be prohibited from disclosing that information for five years from the disclosure of the information. Dkt. No. 1-1 ¶ 1. The agreement also provided that, until two years after the last disclosure of confidential information, "neither party will encourage or solicit any employee or consultant of the other party to leave that other party for any reason." *Id.* ¶ 4. WIT alleges that it provided Talkdesk with confidential information throughout May 2018 and that the last date on which it provided that information was June 4, 2018. Dkt. No. 1 ¶ 20. After meeting with WIT and receiving certain of WIT's allegedly confidential information, Talkdesk elected not to pursue a business relationship with WIT.

WIT alleges that Talkdesk has breached the non-disclosure agreement in two respects. First, WIT alleges that Talkdesk used WIT's confidential and proprietary information "to create

---

[2] Unless otherwise noted, the facts in this section are described as they are recited in WIT's complaint, Dkt. No. 1.

its 'Talk Desk Phone' system," and its "Human-in-the-loop" product, *id.* ¶¶ 30, 40–42.[3]  Second, WIT alleges that Talkdesk Portugal hired 35 former employees of WIT, many of whom were "solicited . . . between June 4, 2018 and June 4, 2020." *Id.* ¶¶ 24–29.

In addition to its breach of contract claim ("Count I"), WIT has brought several other related claims against Talkdesk. Those claims are for: breach of the implied covenant of good faith and fair dealing ("Count II"); conversion ("Count III"); fraudulent misrepresentation ("Count IV"); tortious interference with contract ("Count V"); trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 ("Count VI"); trade secret misappropriation under the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 Del. C. § 2001 *et seq.* ("Count VII"); and copyright infringement under Portuguese Law 82/2021 ("Count VIII"). Talkdesk has moved to dismiss each count.

## II.   Legal Standard

Under the doctrine of *forum non conveniens*, "a federal district court may dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). The doctrine operates essentially as "a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined." *Id.* at 429 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994)). It is the movant's burden to demonstrate that a dismissal for *forum non conveniens* is warranted. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995).

---

[3] Talkdesk asserts that it does not have a product called "Human-in-the-loop," but suggests that WIT may be referring to a Talkdesk product called "Talkdesk AI Trainer." Dkt. No. 8 at 3 n.2.

### III. Discussion

Talkdesk's motion proposes two independent grounds for dismissal: *forum non conveniens* and Rule 12(b)(6). I will grant the motion to dismiss under the doctrine of *forum non conveniens*. For that reason, I do not reach the Rule 12(b)(6) issue.

Talkdesk argues that this action should be dismissed because Portugal is the more appropriate and convenient forum for litigating the case. In general, Talkdesk argues that many of the witnesses and documents that are relevant to this case are in Portugal, that much of the evidence will need to be translated into English from Portuguese, and that Portuguese law applies to at least some of WIT's claims. WIT disagrees, arguing that Portugal is not an adequate alternative forum and that Delaware is the proper forum for litigating the present dispute.

In deciding a motion to dismiss for *forum non conveniens*, the district court must first determine whether an adequate alternative forum can entertain the case. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010). If so, the court must next determine "the appropriate amount of deference to be given the plaintiff's choice of forum." *Id.* Finally, the court must "balance the relevant public and private interest factors" and determine whether those factors "weigh heavily on the side of dismissal." *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442–43 (3d Cir. 2017) (citations omitted); *see generally Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947).

#### A. Whether Portugal Is an Adequate Alternative Forum

For purposes of the first prong of the *forum non conveniens* inquiry, an adequate alternative forum is one in which the defendant is amenable to process and the plaintiff's claims are cognizable. *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013). Talkdesk has met its burden of showing that Portugal is an adequate alternative forum.

4

In its opening brief on the present motion, Talkdesk asserted that it was amenable to process because its subsidiary, Talkdesk Portugal, could be served in Portugal and would not contest personal jurisdiction in the Portuguese courts. Dkt. No. 8 at 7–8. WIT responded that even if Talkdesk Portugal might be amenable to process in Portugal, suing Talkdesk Portugal would not be an adequate alternative because Talkdesk Portugal is not a party to the non-disclosure agreement that WIT alleges was breached. Dkt. No. 22 at 7–8. In its reply, however, Talkdesk has made clear that Talkdesk, Inc., (the defendant in this action) would not contest personal jurisdiction in Portugal. Dkt. No. 25 at 1. And at the oral argument on the present motions, Talkdesk confirmed that Talkdesk, Inc., would accept service in Portugal. Accordingly, the court is satisfied that Talkdesk is amenable to process in Portugal. *Path to Riches, LLC v. CardioLync, Inc.*, 290 F. Supp. 3d 280, 286–87 (D. Del. 2018) (collecting cases in which a defendant's consent to personal jurisdiction was sufficient to establish amenability to process). As noted below, the dismissal will be made conditional on the acceptance of service and jurisdiction by Talkdesk, Inc., if this action is subsequently filed in a Portuguese court.

WIT points to three reasons why, in its view, Portugal is not an adequate alternative forum for this action: (1) pretrial discovery is "much more limited" in Portugal than in a U.S. district court; (2) the use of expert testimony is more limited in Portugal than in a U.S. district court; and (3) WIT will have to incur significant costs if it is required to bring this action in Portugal. Dkt. No. 22 at 5–6. In support of its arguments, WIT principally relies on a "Q&A guide" discussing the Portuguese legal system.[4] Dkt. No. 23-1, Exh. 1.

---

[4] Although evidence outside the pleadings is generally not considered on a motion to dismiss, the Supreme Court has made clear that such evidence may be considered in a *forum non conveniens* inquiry. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528–29 (1988) (noting that a *forum non conveniens* motion "may be resolved on affidavits submitted by the parties").

With respect to pretrial discovery, the guide relied on by WIT explains that court-ordered document production is permitted in Portugal. *Id.* at 13. Moreover, Talkdesk has submitted a declaration from Jose Mota Soares, a Portuguese attorney, who stated that Portuguese courts "allow[] for depositions of witnesses, investigations by experts, and the exchange of documents." Dkt. No. 10 ¶ 7. That testimony has not been challenged by WIT. In any event, the fact that a proposed alternative forum provides more limited discovery procedures than a United States court is generally not a basis for finding that such a forum is inadequate. *See, e.g., Auxer v. Alcoa, Inc.*, 406 F. App'x 600, 603 (3d Cir. 2011) (affirming a dismissal by the district court, which explained that "[a] restriction on pretrial discovery does not make Australia an inadequate forum"); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (A proposed alternative forum may be found to be inadequate only "in rare circumstances" where "the remedy offered by the other forum is clearly unsatisfactory.").

With respect to the use of expert testimony, it is true that in Portugal experts are appointed by the court rather than retained by the parties. Dkt. No. 23-1, Exh. 1, at 15. As the guide relied on by WIT explains, "[i]f the case is especially complex or requires knowledge of different matters, or on a party's request, the court can appoint up to three experts." *Id.* That arrangement would appear to be sufficient to satisfy WIT's need for "technical, financial, and industry experts." Dkt. No. 22 at 6. Moreover, as the Seventh Circuit has explained, the procedural differences between American and Portuguese courts should ordinarily not be given "conclusive or even substantial" weight. *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982) (citing *Reyno*, 454 U.S. at 247).[5]

---

[5] Underlying WIT's complaint about the differences between American and Portuguese law with regard to expert testimony is an assumption that the American system, in which the parties typically retain their own experts, is fairer and more likely to produce accurate results than the Portuguese system, in which the court appoints experts. That is by no means clear; the American system is subject to the criticism that experts retained by parties frequently become advocates for

With respect to the expense of litigating in Portuguese courts, WIT focuses on the "substantial prepayment of costs" that is required to bring an action in Portugal as well as the fact that in Portuguese courts contingency fees are prohibited and fees are recoverable from the losing party. Dkt. No. 22 at 6. As to the first point, the guide cited by WIT states that the filing fee in Portugal is 1,632 euros. Dkt. No. 23-1 at 7. That amount is not itself so burdensome as to render Portugal an inadequate forum. As the Ninth Circuit has pointed out, "[t]he mere existence of filing fees, which are required in many civil law countries, does not render a forum inadequate as a matter of law." *Altmann v. Republic of Austria,* 317 F.3d 954, 972–73 (9th Cir. 2002) (collecting cases in which relatively high filing fees did not render the foreign forum unavailable for purposes of *forum non conveniens* analysis); *see also Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enterprise Fund*, 589 F.3d 417, 424 (7th Cir. 2009) ("Federal courts have declined to find foreign forums inadequate based on filing fees similar to the 4% fee required here."). Furthermore, as Talkdesk points out, the reduced cost associated with litigating this case where the evidence and witnesses are located is likely to offset the filing fee for litigating in a Portuguese court. Dkt. No. 25 at 3.

As for the second and third points, the Third Circuit in *Auxer v. Alcoa, Inc.*, rejected a similar contention that the requirement that the loser pay the prevailing party's attorney fees and the prohibition of contingency fee arrangements in Australian courts rendered Australia an inadequate forum. 406 F. App'x at 603; *see also Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996) ("[I]f the lack of a contingent-fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most forums." (citation omitted)); *Murray v. Brit. Broad. Corp.*, 81 F.3d 287, 292–93 (2d Cir. 1996); *Coakes v.*

---

the side that engaged them, rather than unbiased sources of objective information regarding complex issues.

*Arabian Am. Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987).[6] In any event, the summary of Portuguese law provided by WIT indicates that the losing party does not pay the legal fees of the prevailing party, but is responsible only for court fees and the expert fees that were paid by the prevailing party. Dkt. No. 23, Exh. A at 18. Based on WIT's summary of Portuguese law, I find that the expenses associated with litigating in Portugal and the rules governing the way the costs of litigation are allocated do not render Portugal an inadequate alternative forum.

More generally, courts are hesitant to find that a proposed alternative forum is inadequate because of procedural differences between practices in U.S. and foreign courts. Situations in which a forum may be inadequate include "where the remedy offered by the other forum is clearly unsatisfactory," or "where the alternative forum does not permit litigation of the subject matter of the dispute." *Reyno*, 454 U.S. at 254 n.22. That is, a forum is inadequate if the plaintiff's claims are not "cognizable." *Kisano*, 737 F.3d at 873. WIT has not alleged that its claims are not cognizable in Portugal. Instead, it contends generally that the procedural features of litigation in Portuguese courts make those courts less suitable for litigation than a U.S. district court. Those considerations, however, are not sufficient to support a finding that Portugal is an inadequate alternative forum. *See also Stroitelstvo Bulgaria*, 589 F.3d at 421 ("[T]he test [for adequacy] is whether the forum provides some potential avenue for redress for the subject matter of the dispute."). To the contrary, the record before the court indicates that Portuguese courts can provide

---

[6] The Supreme Court observed in *Reyno* that contingent fee arrangements and the absence of fee-shifting are reasons that American courts are often attractive to foreign plaintiffs. 454 U.S. at 251–52 & n.18. The Court explained that treating such differences between civil litigation in American and foreign courts as a reason for refusing to dismiss cases on *forum non conveniens* grounds "would increase and further congest already crowded [U.S.] courts." *Id.* at 252. The clear implication of the Court's observation is that fee-shifting and a prohibition on contingent fee arrangements in foreign courts is not a sufficient basis for refusing to entertain motions to dismiss on *forum non conveniens* grounds.

8

a remedy for the claims asserted by WIT.[7] Accordingly, Talkdesk has shown that Portugal is an adequate alternative forum for this action.

### B. Level of Deference

The second prong of the *forum non conveniens* inquiry is "the appropriate amount of deference to be given the plaintiff's choice of forum." *Eurofins*, 623 F.3d at 160. Talkdesk argues that WIT's choice of Delaware as the forum for this lawsuit is entitled to little deference because WIT is a foreign plaintiff and because Delaware has very little connection to the events underlying WIT's claims. WIT responds that its choice is entitled to significant deference, particularly because Talkdesk is incorporated in Delaware and because the non-disclosure agreement specifies that Delaware law applies to that agreement.

In general, there is a "strong presumption in favor of the plaintiff's choice of forum." *Reyno*, 454 U.S. at 255. However, "a foreign plaintiff's choice [to sue in a U.S. court] deserves less deference" than the choice by a domestic plaintiff to sue in its home forum. *Id.* at 255–56. As the Supreme Court explained in *Reyno*, "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Id.* at 256. And while a plaintiff's choice to file suit in its home forum is a strong indicator that litigation in that forum is convenient, the same cannot be

---

[7] An example of the "rare circumstances" (*Reyno*, 454 U.S. at 254 n.22) in which a court has found a foreign forum inadequate is *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802 (D. Del. 2011). In that case, the district court refused to dismiss the action on *forum non conveniens* grounds in favor of an action in Egypt after taking judicial notice of "the recent revolutionary events that have transpired in Egypt—including the resignation of longtime President Hosni Mubarak in January 2011 and the dissolution of Egypt's constitution and parliament in February 2011." *Id.* at 807. Under those "uncertain circumstances," the court stated that it was "unwilling to assume that the prior adequacy of the Egyptian courts necessarily exists today." *Id.* Notably, in a subsequent case the Third Circuit upheld a decision from this court finding that the conditions in Egypt as of 2016 were such that Egypt could not be deemed an inadequate forum for resolving the dispute at issue. *See Wilmot v. Marriott Hurghada Mgmt., Inc.*, No. 15-618, 2016 WL 3457007, at *2 (D. Del. June 22, 2016), *aff'd*, 712 F. App'x 200 (3d Cir. 2017).

said for a foreign plaintiff who chooses to sue in a U.S. court in a district with which the foreign plaintiff has no connection.

The Third Circuit elaborated on that point in *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 634 (3d Cir. 1989), where it explained that "the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one." That reluctance, the court added, "can readily be overcome by a strong showing of convenience." *Id.*

The fact that a foreign plaintiff "is suing the defendant in the latter's home forum" is a relevant consideration in determining convenience. *Id.*; *see also Tech. Dev. Co. v. Onischenko*, 536 F. Supp. 2d 511, 521 (D.N.J. 2007) (finding that the defendant's residence in the forum state "support[ed] the conclusion that [the plaintiff] chose this forum out of convenience"); *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1343 (11th Cir. 2020) (collecting cases, and requiring that the defendant "demonstrate—with positive evidence—why litigating on its home turf would be so oppressive and vexatious that a federal court should decline jurisdiction"). However, the Third Circuit has made clear if that the litigation has little or no connection with the forum state other than that the defendant is incorporated there, that may indicate that suit in that forum is not convenient.

For example, in *Dahl v. United Technologies Corp.*, 472 F. Supp. 696, 701 (D. Del. 1979), the district court dismissed the plaintiffs' claims on *forum non conveniens* grounds, in part because "the only conceivable relation Delaware has to the litigation is the fact that the defendant . . . is incorporated here." The Third Circuit affirmed the district court's dismissal, making the underlying rationale even clearer. The court wrote that "the commitment of Delaware judicial

10

time and resources to this case is not justified by any nexus Delaware has with what is essentially a Norwegian case." *Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1032 (3d Cir. 1980).

The Third Circuit reached the same conclusion in *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 193 (3d Cir. 2008), a case analogous to this one. In *Windt*, the only connection between the case and the forum state in which the plaintiffs brought suit was that two of the defendants were residents of that state (New Jersey). Citing *Dahl*, the court held that dismissal on *forum non conveniens* grounds was justified because "there are no allegations that actions or events occurring in New Jersey gave rise to the fraud and mismanagement at issue in this case." *Id.* The court added that "without a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service." *Id.*

More recently, in *Wilmot v. Marriott Hurghada Management, Inc.*, 712 F. App'x 200, 203 (3d Cir. 2017), the Third Circuit reiterated the point made in the *Dahl* and *Windt* cases, upholding the district court's decision to afford the plaintiff's choice of forum "significantly less deference" when the lawsuit's "only connection to the District of Delaware [was] that it [was] the defendants' place of incorporation." Trial level decisions from this district are to the same effect. *See Path To Riches*, 290 F. Supp. 3d at 294 (dismissing an action filed in Delaware where "the dispute has strong connections to Israel and no connection to Delaware other than [the defendant's] incorporation."); *Brunswick GmbH v. Bowling Switz., Inc.*, No. 07-471, 2008 WL 2795936, at *4 (D. Del. July 18, 2008) ("Where the locus of a dispute is foreign, as it is here, a defendant's incorporation in the forum state is insufficient to transform the matter into a localized controversy.").

11

In light of the above considerations, I conclude that WIT's choice to litigate in Delaware is due some deference, but considerably less deference than would be afforded to a domestic plaintiff choosing to litigate in its home state.

### C. Public and Private Interest Factors

The third prong of the *forum non conveniens* inquiry requires the court to "balance the relevant public and private interest factors" and to determine whether they "weigh heavily on the side of dismissal." *Trotter*, 873 F.3d at 442–43 (citations omitted). The private interest factors include access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining attendance of unwilling witnesses; and "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* at 442 (citation omitted). The public interest factors include court congestion; the likelihood that the case will burden a jury composed of people with no relation to the litigation; the probability that the case will "touch the affairs of many persons" in the community; and the chances that the court will be "at home" with the governing law. *Id.* (citation omitted).

#### 1. *Private Interest Factors*

Regarding the private interest factors, there is a serious question whether evidence from Portugal would be available in a case brought in this country. Talkdesk argues that "most, if not all of the witnesses are in Portugal and much of the documentary evidence is in Portuguese." Dkt. No. 8 at 11. Talkdesk further contends that many of the witnesses would not be subject to compulsory process in Delaware and that "Portugal permits depositions only in cases pending in Portugal." *Id.* (citing Dkt. No. 10 ¶ 12). In addition, according to Mr. Soares's declaration, Portugal will not execute a letter of request for documents from a U.S. court under the Hague Convention. Dkt. No. 10 ¶ 12.

Maintaining this action in Delaware would also entail significant costs. Many of the witnesses, including the 35 WIT employees who were allegedly recruited to work for Talkdesk Portugal in violation of the non-disclosure agreement, are in Portugal. And many of the pertinent documents are written in Portuguese. Even for willing witnesses and witnesses under the control of Talkdesk, transporting the witnesses to Delaware for trial would be burdensome. And, as Talkdesk notes, "[p]roceeding with this action in Delaware would necessitate the translation of a large number of documents at great expense to the parties." Dkt. No. 8 at 11. Although WIT contends that many of the Portuguese witnesses speak English, it is nonetheless likely that significant translation services would be required if the case were tried in Delaware. All those factors, Talkdesk contends, weigh in favor of dismissal.

In response, WIT argues that "the majority of the discovery in this case will be e-discovery and the need to collect substantial physical evidence" will be minimal. Dkt. No. 22 at 11–12. WIT also contends that Talkdesk will be able to compel the attendance of its employees. *Id.* at 12. WIT adds that Talkdesk has identified no unwilling witnesses, and that any depositions of Portuguese residents could be taken remotely. *Id.* Finally, WIT points out that many of the key witnesses speak English, which would limit the need for translation to "certain documents." *Id.* at 13.

On balance, Talkdesk has the more persuasive position with respect to the private interest factors. Although WIT argues in its brief that depositions of Portuguese witnesses could be conducted remotely, that suggestion is at odds with Talkdesk's showing that "depositions of witnesses who are Portuguese citizens living in Portugal generally can only be taken in cases pending in Portuguese courts." Dkt. No. 10 ¶ 12. Likewise, WIT's contention in its brief that employees of a defendant corporation may be compelled to testify does not comport with Talkdesk's showing that "U.S. courts cannot order a Portuguese employee of a Portuguese

13

subsidiary of a U.S. company, living in Portugal, to testify in the United States," even at trial. *Id.* And Talkdesk has indicated that at least six relevant employee witnesses have left Talkdesk since 2018 and could not be compelled to testify in a U.S. court. Dkt. No. 26 ¶ 2. Beyond that, while it may be possible to conduct some e-discovery in Delaware without a request for letters rogatory, Mr. Soares stated in his declaration that, because Portugal has not agreed to Article 23 of the Hague Convention, the parties would be unable to compel the production of evidence that physically resides in Portugal. Dkt. No. 10 ¶ 12. It is also true that because many of the potential witnesses are fluent in English, the potential cost of translation may be less burdensome than Talkdesk suggests. Nonetheless, it appears that at least some translation, particularly of documents, would be required if the case were to proceed in this court. *See* Dkt. No. 25 at 8.

By contrast, evidence in Portugal will be much easier to obtain if the dispute is before a Portuguese court. Talkdesk Portugal, which is subject to Portuguese laws, is the direct employer of all the potential witnesses who are still employed with that company. Moreover, Talkdesk, Inc., has represented to the court that it can direct the appearance of all those witnesses who are employed by Talkdesk Portugal in a Portuguese court. As for documentary evidence, WIT has not indicated with specificity what relevant documentary evidence from the United States would be unavailable to it in a Portuguese proceeding, but to ensure that it is not denied relevant documentary evidence from Talkdesk, Inc., that is found in this country, the court will condition its dismissal on Talkdesk, Inc., voluntarily producing documents in the same manner that would be required in a federal district court. *See Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 183 (3d Cir. 1991).

Overall, I find that the private interest factors weigh heavily in favor of dismissal.

### 2. *Public Interest Factors*

Regarding the public interest factors, Talkdesk raises three principal contentions: first, that court congestion in Delaware weighs in favor of dismissal; second, that the limited connections that Delaware has to this case do not justify burdening the District of Delaware and Delaware jurors with this dispute; and third, that Portuguese law applies to at least half of WIT's claims, so that the court's familiarity with the governing law does not support keeping this case in Delaware. WIT disagrees and contends that the public interest factors do not weigh in favor of dismissal.

With respect to court congestion, it is generally true that if the plaintiff's chosen forum is heavily congested and the proposed alternative forum is less congested, the congestion factor may weigh in favor of dismissing the case in favor of the less congested forum. However, when the defendant fails to present evidence of the "relative congestion" of the two forums, the comparative court congestion may not be considered "as a factor weighing toward dismissal." *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 613 (3d Cir. 1991); *see also Roe v. Wyndham Worldwide, Inc.*, No. 18-1525, 2020 WL 707371, at *7 (D. Del. Feb. 12, 2020). Even though Delaware is indisputably "one of the busiest federal courts in the nation," *Roe*, 2020 WL 707371, at *7, Talkdesk has failed to provide any detail regarding court congestion in Portugal. For that reason, I will not consider court congestion as a factor that weighs in favor of dismissing the case. *Id.*

As for the local interest factor, Delaware has only two connections to this case: (1) Talkdesk is incorporated in Delaware, and (2) Delaware law applies to the non-disclosure agreement between Talkdesk and WIT by virtue of the choice-of-law clause in that agreement. With respect to the first connection, Delaware has at least a theoretical interest in resolving cases involving Delaware corporate citizens. As noted above, however, that interest is diminished when the cause of action "do[es] not arise out of or relate to Defendant's status as [a] Delaware

15

corporation." *Roe*, 2022 WL 707371, at *7; *see also Dahl*, 632 F.2d at 1032; *Wilmot*, 712 F. App'x at 203.

As the Third Circuit put it in *Dahl*, this case is "essentially a [Portuguese] case." *Dahl*, 632 F.2d at 1032. And as in *Windt*, the dispute in this case is distinctly not based on events occurring in Delaware or elsewhere in the United States. As such "there is little public interest in subjecting [Delaware jurors] to the burdens of jury service," and "the commitment of Delaware judicial time and resources to this case is not justified by any nexus Delaware has with what is essentially a [Portuguese] case." 529 F.3d at 193 (citation omitted); *see also Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 300 (3d Cir. 2010) ("We agree with the district court that the locus of the alleged culpable conduct was Italy, not Pennsylvania.").

With respect to the second asserted connection between Delaware and this case—concerning the law that will govern the dispute—both Portuguese law and Delaware law have a role to play. Count VIII of WIT's complaint is a claim for copyright infringement under Portuguese law. As to the tort claims raised in Counts III, IV, and V of the complaint, the parties disagree about whether those claims are governed by Delaware or Portuguese law. Choice-of-law principles require the court to apply the "most significant relationship test" from the American Law Institute's Restatement of the Conflict of Laws. *Path to Riches*, 290 F. Supp. 3d at 295; Restatement (Second) Conflict of Laws § 145 (1971). "Without engaging in a burdensome claim-by-claim analysis," *see Path to Riches*, 290 F. Supp. 3d at 295, it appears that Portuguese law would apply to those claims, since the relevant conduct alleged in those claims occurred in Portugal. *See* Restatement (Second) Conflict of Laws § 145 cmt. e. Although it is not clear that Delaware law and Portuguese law regarding the tort claims would differ in any relevant respect,

16

Portuguese law is likely to govern as to those claims, so the possibility that questions of Portuguese law may arise involving those claims weighs in favor of transfer.

It is true that because of the choice-of-law provision in the non-disclosure agreement at the center of this dispute, Delaware law would apply to WIT's contract claim.[8] While that fact is entitled to consideration in the *forum non conveniens* analysis, it does not outweigh the fact that the contract was entered into in Portugal and was directed to activities occurring entirely in Portugal. For example, in the *Eurofins* case, the contracts at issue were governed by Delaware law. Despite the choice of law provision, the Third Circuit held that district court did not abuse its discretion in dismissing the case. The court stated that "the litigation is focused on French defendants' alleged breaches of contract and fiduciary duties, which took place in France, and, therefore France has a more significant interest in resolving the dispute than Delaware." 623 F.3d at 162. Moreover, there has been no suggestion that there is any respect in which the two-page non-disclosure agreement would be given a different interpretation under Portuguese law than under Delaware law.[9]

In urging that Delaware is the proper forum for this case, WIT also relies on its assertion of a claim under the DUTSA. That factor is unconvincing, however, because it has been uniformly held by both state and federal courts in Delaware that the DUTSA does not have extraterritorial

---

[8] For purposes of this motion, I will also assume without deciding that Delaware law would apply to WIT's claim for a breach of the implied duty of good faith and fair dealing (Count II), which is a duty that "inheres in every contract." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009). In any event, I note that a claim for breach of the implied duty lies only when the plaintiff alleges the breach of an implied obligation that is not expressly covered by the terms of the contract. *See id.*

[9] Talkdesk points out that all the other contracts at issue in this case, such as the employment contracts of the former WIT employees who were hired by Talkdesk Portugal, will be governed by Portuguese law. To the extent that legal questions regarding those contracts arise, the law to be applied would be Portuguese.

effect. *See Elkay Interior Sys. Int'l, Inc. v. Weiss*, No. 22-438, 2022 WL 17961568, at *4 (D. Del. Dec. 27, 2022); *AlixPartners, LLP v. Mori*, No. 19-0392, 2022 WL 1111404, at *18 (Del. Ch. April 14, 2022); *Focus Fin. Partners, LLC v. Holsopple*, 250 A.3d 939, 970–71 (Del. Ch. 2020).

That leaves only WIT's DTSA claim in Count VI of the complaint. U.S. law would apply to that claim, assuming the statute is given extraterritorial effect in a case such as this one.[10] And the possibility that domestic law would apply to that claim must be considered in the *forum non conveniens* analysis. *See Lony*, 886 F.2d at 643. The presence of a claim based on U.S. law thus is a factor weighing somewhat against transfer. *See id.* at 642–43 (concluding that "the applicability of local law" weighed in favor of retaining jurisdiction when Delaware law applied to some claims and West German law applied to others). On balance, however, I find that the governing law factor is neutral because Portuguese, federal, and Delaware law are all likely to apply to various claims in this case, regardless of where the case is litigated.

After reviewing each of the considerations discussed above, I find that the public interest factors weigh moderately in favor of dismissal.[11]

---

[10] The question of the extent to which the civil cause of action under the DTSA would extend to extraterritorial acts of the sort at issue in this case has not been conclusively resolved, *see Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 436 F Supp. 3d 1150, 1157–63 (N.D. Ill. 2020), but for present purposes I will assume that the statute is applicable to the acts.

[11] In *Ryanair DAC v. Booking Holdings Inc.*, No. 20-1191, 2021 WL 7209367, at *5 (D. Del. Dec. 27, 2021), a court in this district held that the private and public interest factors weighed against dismissal. There are several important distinctions between that case and this one. First, the *Ryanair* court found that relevant evidence of the alleged unlawful conduct would likely be found in this country, and to the extent that relevant evidence was present in a number of other countries, dismissing the case in favor of a proceeding in Ireland (the defendants' preferred forum) would not solve the problem of access to evidence. *Id.* at *5. Second, the court noted that the defendants were alleged to have "gained unauthorized access to the plaintiff's website and violated U.S. law in doing so." *Id.* at *6. The court found that those allegations against the defendants—all Delaware corporate citizens—"justify the burdens that may be imposed on Delawareans to sit as jurors." *Id.* Finally, the court noted that it was more familiar with the U.S. law at the core of the case than an Irish court would be, and that the case would not require the court to decide any issues of Irish law. *Id.*

## IV.     Conclusion

In summary, Talkdesk has shown that Portugal is an adequate alternative forum. WIT's choice of forum is entitled to some deference, but significantly less deference than would be afforded to a domestic plaintiff suing in its home forum. The private interest factors weigh heavily in favor of dismissal, and the public interest factors weigh moderately in favor of dismissal.

More generally, the center of gravity of this case is clearly in Portugal. The case involves a Portuguese plaintiff seeking a remedy for misconduct that allegedly occurred in Portugal; it will require testimony from numerous Portuguese witnesses; and it will likely involve production of a substantial amount of evidence that is written in Portuguese. Moreover, questions of Portuguese law are likely to permeate several of the issues in this case. By contrast, the only connections that this case has to Delaware are that Talkdesk is incorporated in Delaware and that the non-disclosure agreement provides that it is governed by Delaware law. In view of those considerations, I find that Talkdesk has shown that Portugal "is the more appropriate and convenient forum for adjudicating the controversy." *See Sinochem*, 549 U.S. at 425. Accordingly, Talkdesk's motion is granted and this action is dismissed under the doctrine of *forum non conveniens*.

To be clear, this dismissal is conditioned on Talkdesk's consent to personal jurisdiction and acceptance of service of process for the Portuguese action, along with the Portuguese court's acceptance of jurisdiction, should WIT choose to bring this action in Portugal. *See Behrens v. Arconic, Inc.*, No. 20-3606, 2022 WL 2593520, at *4 (3d Cir. July 8, 2022), *cert. denied*, 143 S. Ct. 787 (2023) (courts may condition dismissals "to ensure the adequacy of the new forum, such as by removing procedural barriers that could prevent the plaintiffs from being heard, . . . or allowing the suit to return should the new forum reject it on jurisdictional grounds"); *see also*

19

*Acuña-Atalaya v. Newmont Mining Corp.*, 612 F. Supp. 3d 384, 395 (D. Del.), *aff'd as modified*, 838 F. App'x 676 (3d Cir. 2020) (applying similar conditions to a dismissal).

In addition, to ensure that WIT is not denied access to relevant evidence in this country in the possession of Talkdesk, Inc., the dismissal will be conditioned on Talkdesk, Inc., making all relevant witnesses and documents under its control available to WIT in the Portuguese forum for discovery and trial. *See Reyno*, 454 U.S. at 257 n.25 ("In the future, where similar problems are presented, district courts might dismiss subject to the condition that defendant corporations agree to provide the records relevant to the plaintiff's claims."); *Lacey*, 932 F.2d at 183 (district court conditioned its dismissal "on defendants making all relevant witnesses and documents in their control available to plaintiff in the alternative forum for discovery and trial"). If any of those conditions are not met, WIT may refile this case in this court *nunc pro tunc*.

IT IS SO ORDERED.

SIGNED this 15th day of May, 2023.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE